66 So.2d 151

### CHICAGO, MOBILE DEVELOPMENT CO. v. G. C. COGGIN CO. et al.

#### I Div. 452.

Supreme Court of Alabama.

June 18, 1953.

Caffey, Gallalee & Caffey, Mobile, for appellant.

156

Bart B. Chamberlain, Jr., Mobile, for appellee Coggin Co.

Johnston, McCall & Johnston, Mobile, for appellees Snow.

## PER CURIAM.

This is an appeal from a final decree in equity in two aspects. In fact it is in the form of two separate appeals by the same party from one final decree which has two aspects. That means that the final decree was favorable to the complainant against appellant as one of the respondents, and favorable to cross-complainant. (who was also a respondent) against appellant as a cross-respondent. There are two separate supersedeas appeal bonds, and appellant has assigned error separately on each such appeal. There is no question raised as to the sufficiency of the bill of complaint on a test by demurrer.

We will first refer to. the aspect of the decree granting relief to the complainant.

The bill of complaint alleged the following facts. On July 15, 1944 the appellant owned 2620 acres of land in Mobile County. On. that date appellant executed an oil lease to the Sun Oil Company for the purpose of exploring and drilling or mining for oil, gas and other minerals. On December 7, 1948 appellant executed a deed to Rufus H.. Snow and H. W. Snow conveying 1100 acres of land specifically described. The purchase price named in the deed was $16,000, of which $4,750 was paid in cash. The balance due was evidenced by a promissory note, secured by a lien reserved in the deed, payable $3,750 in one, two and three years after date with interest at the rate of six per cent per annum on the unpaid balance, and with the privilege of paying any annual installment on or before maturity. The deed

contained the usual covenants of warranty. The oil lease permitted the lessee upon payment of a stipulated sum per annum on or before the anniversary of said lease, which was the 15th day of July, to extend the same for the next succeeding year.

At the time of the execution of the deed by appellant to the Snows on December 7, 1948 the rentals under said oil lease had been paid to appellant for the year ending July 15, 1949: that payment having been made in advance as of July 15, 1948 on or about the anniversary 1948. The rent for the next succeeding year was paid by the lessee to appellant, which extended the lease until July 15, 1950. The oil company did not and has not entered upon the land under said lease.

On October 13, 1949, after the lessee had paid the rental to appellant on July 15, 1949 for the year ending July 15, 1950, the Snows executed a warranty deed to the complainant G. C. Coggin Company, Inc., conveying to it all of the land which had been conveyed to them by the deed from appellant dated December 7, 1948, except 20 acres which had been included by mistake, and as to which the parties had agreed that the purchase money should be abated in the sum of $300. In said deed it was stipulated that Coggin Company would assume the indebtedness to appellant, for which a lien was reserved in the deed from appellant to the Snows. Coggin Company took possession of the lands and began cutting timber and pulpwood and making payments on the purchase price to appellant.

On February 27, 1950, before another deferred rental became due, Coggin Company filed the instant bill in equity against appellant and the Snows seeking an ascertainment of the balance due appellant secured by said lien and for a redemption. The bill alleged the payments and credits, leaving a balance to be due under said lien of $3,674, and tendered and paid that amount into court. Complainant in said bill claimed that it was entitled to credit as against such unpaid balance for a prorata share of the rents earned after October 13, 1949 under said lease: complainant's deed being dated October 13, 1949.

The bill prayed that the court would ascertain the balance remaining unpaid to appellant after giving complainant credit for said prorata rentals and such damages as it may be entitled to on account of the existence of said oil lease, contrary to the warranty expressed in the deed from appellant to the Snows and in their deed to complainant.

The bill alleged that appellant claimed there was an oral agreement between the Snows and appellant whereby appellant was to receive, in addition to the sum stipulated in the deed, the deferred rentals provided for in the oil lease, and that said agreement was void and without force and effect or, in the alternative, that appellant should be estopped to claim or set up the existence of said oral agreement on account of certain matters alleged in the bill.

The equity of the bill is to redeem land from a lien, reserved in the deed executed by appellant to the Snows on December 7, 1948. The distinction between such a lien and a vendor's lien (so-called) is not here material. See Sims v. City of Birmingham, 256 Ala. 540, 55 So.2d 833.

■ It is clear that the bill has equity to redeem, section 3, Title 33, Code; Baker v. Farish, 244 Ala. 178, 12 So.2d 547, and to obtain the incidental relief prayed for as stated above. Neal v. Williams, 168 Ala. 310, 53 So. 94; Alger-Sullivan Lumber Co. v. Union Trust Co., 207 Ala. 138, 92 So. 254.

Since complainant acquired the reversion on October 13, 1949, appellant was held by the decree of the court to be due to pay complainant the proportionate part of the annual rent from October 13, 1949 to July 15, 1950, treated as the difference between the value of the land with and without the oil lease, using the proportionate part of the rentals as a factor in finding the result. This was found to be $409.42, which with interest at six per cent amounted to $442.29. For that amount a personal judgment was rendered in favor of complainant and against appellant. The court also ascertained and decreed that the balance of the purchase money which complainant assumed in its deed of October 13, 1949 was

$4,342.27 with interest at six per cent from December 29, 1949.

The assignments of error (1 and 2) in respect to that aspect of the decree are as to the rendition of a judgment in favor of complainant against appellant in the sum of $442.29 and all costs in this behalf expended, but they do not question the amount of the balance of the purchase money assumed by complainant. Also error (assignment 3) in decreeing that the claim of appellant to the rentals accruing and to accrue after October 13, 1950 under the oil lease be cancelled, and (4) that appellant has no claim to rentals which have accrued or may arise in the future under the oil lease after October 13, 1944 (1949?).

Considering the last above assignments of error (3 and 4), we are told that the ruling of the court was based on the theory that appellant did not and could not by parol agreement effectually sever from the reversion the right to rents subsequently maturing on a sale of the land by deed with no such reservation in it nor in some other writing. The theory on which the court acted is stated in Alabama Gold Life Ins. Co. v. Oliver, 78 Ala. 158, to be that "the legal effect and import of the conveyance from Mrs. Smith to the defendant, C. D. Oliver, are to vest in him all the estate in the lands conveyed, which she held and owned at the time of its execution; and cannot, as between the parties, be substantially added to, or diminished, or varied, by evidence of parol agreements, prior or contemporaneous." McCall v. Morgan, 244 Ala. 472, 14 So.2d 374.

The effect of that principle is not to cancel such claim of appellant, the grantor, in such a conveyance but to recognize it as passing to the grantee. In this case it passed from appellant to the Snows by the deed of December 7, 1948. McCall v. Morgan, supra. The authorities are digested in 19 Alabama Digest, Vendor and Purchaser, ⟐196, including pocket part. When the Snows sold to complainant their deed of October 13, 1949 passed to complainant all rents which matured thereafter. The decree was therefore inaccurate in cancelling the claim. It should be modified by eliminating that feature of it. However,

as drafted, it was not prejudicial to appellant. The effect is that all rents which matured under the lease after December 7, 1948, when appellant sold to the Snows, were assigned to the Snows; and that all the rents which matured after October 13, 1949, when the Snows sold to complainant, passed to complainant. That left ownership in the Snows of all rents which matured after December 7, 1948 and before October 13, 1949, which are not claimed on this appeal.

On that principle the amount of the rents is not subject to proration between the grantor of the reversion and the grantee. The grantee is not entitled to any portion of the rent which was due under the lease prior to the deed to him, and was entitled to the whole of the rent which matured under the lease after the deed. Walsh v. Bank of Moundville, 222 Ala. 164, 166, 132 So. 52; English v. Key, 39 Ala. 113.

The rent for the year from July 15, 1948 to July 15, 1949 and for the year from July 15, 1949 to July 15, 1950 were due and paid to appellant before complainant received a deed to the reversion on October 13, 1949. The rent was next to become due July 15, 1950, which was after this suit was begun in February 1950.

That brings us directly to the first assignment of error complaining of a personal judgment rendered in favor of complainant against appellant for a breach of the covenants in the deed to the Snows. There was no prayer for a personal judgment, but there was a prayer for general relief which would justify a personal judgment if found to be proper. But if appellant is found to be due complainant anything on account of a breach of the covenants referred to, the appropriate relief would be to allow it as a credit on the debt to appellant assumed by complainant, as prayed for.

The question at this point is whether by reason of the oil lease there was a breach of those covenants which is available to complainant.

There has been no dispossession of the land nor any part of it by reason of the lease. The mere existence of a lease

is an encumberance to the extent that it is unexpired. As a general rule a lease carries the right to possession and is followed by possession of the lessee. So that, in the absence of special circumstances the measure of damages for the breach of a covenant against encumbrances by reason of a lease is the value of the use of the premises leased, and any rent that may be received by the covenantee should be deducted from that value. 21 C.J.S., Covenants, § 145(c), pp. 1021–1022. But if special circumstances exist a different principle has effect. Those circumstances exist when, as here, the lessee has not asserted his right to the use and possession under his lease and has not disturbed the possession of the reversioner.

■ Since the lease is an encumbrance, a covenant against encumbrances is broken immediately upon making the covenant if a lease is then outstanding, although there has been no ouster by the lessee nor interference with the possession and use of the land by the owner. And the covenant being then broken and the right to sue then matured, it is a personal right which the covenantee owns and does not pass merely by a conveyance of the land. It is not an appurtenant to the land. Copeland v. McAdory, 100 Ala. 553, 13 So. 545; Anniston L. and Mfg. Co. v. Griffis, 198 Ala. 122, 73 So. 418; Colson·v. Harden, 224 Ala. 665, 141 So. 639; Wolff v. Woodruff,[1] 61 So.2d 69(9) and (10). Complainant cannot recover for its breach. The Snows are not making that claim on this appeal. We should therefore cast aside any question as for a breach of the covenant against encumbrances.

■ But there are covenants of general warranty and for quiet enjoyment. Those covenants are not broken until there is an eviction, actual or constructive, as defined in Musgrove v. Cordova Coal, Land and Improvement Co., 191 Ala. 419, 67 So. 582; Oliver v. Bush, 125 Ala. 534, 27 So. 923; Dallas Compress Co. v. Liepold, 205 Ala. 562, 88 So. 681. The covenant runs as an appurtenant and a right of action for its breach comes into being in favor of him who by conveyance would at the time of the ouster be deprived of his right by reason thereof. Such a covenant before its breach, therefore, passed from the Snows to complainant. Blaum v. May, 245 Ala. 156, 16 So.2d 329; Wolff v. Woodruff, supra; Alger-Sullivan Lumber Co. v. Union Trust Co., supra.

■ Although the covenant of general warranty and for quiet enjoyment is only breached when the possession is disturbed, the disturbance may be by an encumbrancer. Keel v. Ikard, 222 Ala. 617, 133 So. 906; Blaum v. May, supra; Wolff v. Woodruff, supra. But the breach is then of the covenant of warranty and quiet enjoyment, not that against encumbrances.

■ Since complainant has suffered no eviction or disturbance in its possession of the land, it has no right of action for the breach of the covenant for quiet enjoyment or of general warranty, or other covenant expressed in the deed of appellant to the Snows.

The result is that on the appeal from the decree in favor of complainant against appellant, it should be modified so as to vacate and set aside that part of it whereby a personal judgment was rendered in favor of complainant against appellant for the sum of $442.29. There is no assignment of error going to that feature of the decree which fixes $4,342.27 as the amount of the purchase money debt to appellant which was assumed by complainant. There is no modification in that respect. It is also modified as to that feature of it which cancels the claim of appellant to rents which accrued after October 13, 1949 on account of the oil lease, by eliminating the same from the decree. Since all such claims were assigned by the conveyance of the land without severing the rents they are not subject to cancellation. The assignment of error with respect to the costs will be considered later.

*On appeal from that part of the decree which rendered a personal judgment against appellant in favor of the Snows on their cross-bill.*

1. 258 Ala.Sup. 1.

The Snows were made parties respondent to the original bill. There was no relief sought against them. Apparently the purpose of making them parties was to foreclose any claim by them to the rights asserted by complainant against appellant. They were probably proper parties in respect to that claim, though not necessary parties. But the right to make them parties is not questioned on this appeal.

The Snows appeared and answered the bill of complaint and with their answer filed a cross-bill making appellant cross-respondent, and also adding as a party Jere Austill, an attorney who was the principal stockholder and manager of appellant, but no relief was sought against him. The answer admitted substantially all the material allegations of the bill. The relief sought by the cross-bill was against this appellant for a breach of the covenants in its deed to them, claiming that they are entitled to the rents from the lessee, Sun Oil Company, which have accrued and will accrue after June 1948 (?) (their deed was dated December 7, 1948); that they are entitled to reasonable attorneys' fees and to such amounts as they have suffered and may suffer as damages, costs and expenses for the failure of cross-respondent (appellant) to defend the title to the lands described in said deed to them; that appellant has waived any right, title or claim it may have in or to said oil and mineral lease; that it is estopped to assert any right, claim or title thereto, and that it is liable to them for all damages, costs, and expenses which they have suffered or may suffer as a result of the breach of warranty contained in their deed to complainant; and that appellant be decreed to have breached its title to them as to a certain described 20 acres; and that Jere Austill is liable to them for his negligence as their attorney for the failure to except the oil lease from the covenants of warranty in their deed to complainant and in not informing them of the existence of it.

A demurrer to the cross-bill was overruled. It was answered and relief was granted on the final hearing to the cross-complainants against this appellant as cross-respondent. No relief was decreed against Jere Austill, but he was dismissed as a party on motion of cross-complainants.

The court recited in the final decree that the cross-complainants (the Snows) requested and demanded of appellant to defend in their behalf (in this suit?) the title to the land included in their warranty in the deed of December 7, 1948. That appellant refused to do so upon the stated ground that the covenants of warranty in said deed and in the deed from them to complainant had not been breached, and at the same time insisted that the rents accruing and to accrue under said lease belonged to appellant, thereby forcing the Snows to employ solicitors to defend the bill of complaint against them at an expense of $600 which the court found to be reasonable. Further, that since the covenant of warranty of title and to defend the same ran with the land, it became and was the primary obligation of appellant to defend the suit herein filed against its grantees (the Snows), and for a failure to do so appellant became liable under the cross-bill for the reasonable cost of said defense. Wherefore, the court decreed that the Snows have and recover of appellant the sum of $600 as for attorneys' fees and all court costs in this behalf expended.

The claim for attorneys' fees exists as an element of damages recoverable by a covenantee for a breach of a covenant to warrant and defend the title against the lawful claims of all persons, and when the circumstances support the claim for the attorneys' fees. So that, the first question is whether the Snows have a cause of action for the breach of such a warranty in the deed. If so, do the circumstances support the claim for attorneys' fees. The Snows claim that the covenant was breached in the failure of appellant, the covenantor, to defend them in the instant suit after notice was given it to do so.

The covenant in the deed to warrant and defend the title of the grantee and his successors against the lawful claims of all persons is in substance a covenant for possession and quiet enjoyment, and it is not broken so long as the grantee's enjoyment and possession are not interfered with. Oliver v. Bush, 125 Ala. 534, 27 So.

**162**

923. "It operates *in futuro,* unless the true owner is in actual possession at the time the covenant is entered into, in which case there is. a breach *eo instanti;* it runs with the land, that is, it is intended for the benefit of the ultimate grantee in whose time it is broken, and there can be no breach except by an actual or constructive eviction." A constructive eviction is there defined, not here occurring. Musgrove v. Cordova Coal, Land & Improvement Co., 191 Ala. 419, 67 So. 582, 583. Since there was no eviction by the encumbrancer while the land was owned by the Snows, they have no claim for a breach of such warranty.

Special damages for expenses incurred in defending a suit wherein the covenantee was. evicted, may sometimes be recovered against the covenantor where there has been a breach of the general warranty and of quiet enjoyment by that eviction. The theory is that it is the duty of the covenantor to defend the covenantee's title in such a suit and upon his refusal or neglect to do so, after proper notice, the latter would have the right to employ counsel for that purpose and recover in an action on the covenant such reasonable fees as he had been compelled to pay or incur. Chestnut v. Tyson, 105 Ala. 149, 162, 163, 16 So. 723.

It was said in DeJarnette v. Dreyfus, 166 Ala. 138, 51 So. 932, that this principle does not allow a recovery of attorneys' fees in prosecuting a suit in equity to enjoin an exercise of the right of a public easement over the lot in question. The eviction by the city had occurred and was by a superior and paramount right of the city for a public thoroughfare or street. It was said that the filing of the suit was manifestly an unnecessary and useless expense. It was not allowed.

The instant suit is not to test the title of one alleged to be superior to that conveyed by appellant to the Snows. The oil lessee is not here asserting his claim in a suit against the Snows or complainant which the covenantor, appellant, should defend and which the Snows as covenantees defended and incurred attorneys fees.

 The duty to warrant and defend the title conveyed to the Snows against the lawful claims of all persons does not justify a charge for attorneys' fees whenever that title is brought into question in a court proceeding. As we have shown, it is no more than a warranty for quiet enjoyment. There is no authority which holds, so far as we can find, that under that warranty a duty arises to pay the expenses of litigation whenever that title is involved, but only in a suit with the claimant of an outstanding superior right, usually seeking to obtain possession in order to profit by that right. But even on the theory insisted on by the Snows, this suit did not seek to call into question their warranty to complainant. Complainant neither sought nor obtained a decree against the Snows nor a decision as to any right against them on their warranty. But if it had done so, the warranty of appellant to defend them did not cover such a situation so far as we are able to discover in the law. No such authority has come to our attention. On the other hand, there is authority opposed to that theory. 21 C.J.S., Covenants, § 150, p. 1030, note 84. The cases noted are directly in point. Smith v. Nussbaum, Mo. App., 71 S.W.2d 82, 87; Myers v. Munson, 65 Iowa 423, 21 N.W. 759; see, 61 A.L.R. 167 et seq.

The decree declared (4) that complainant is entitled to redeem by paying to the respondent (this appellant) the sum of $4,-342.27 with interest at six per cent per annum from December 29, 1949, and further (6) that since the amount so ascertained is in excess of the sum of $3,674, which was tendered by complainant and paid into court, the register was ordered to refund said sum and pay it to said complainant.

 The decree does not specify the time in which complainant must pay said sum to effect a redemption. This implies that it must be done immediately. The decree does not order further proceedings or the effect of a failure by complainant to perfect redemption as authorized. The decree should fix a time in which complainant must pay the amount ascertained to be necessary to redeem, and also provide that upon a failure to do so the register be ordered to proceed to sell the land for the purpose of paying the debt, Mooney v. Walter, 69 Ala. 75; Alston v. Morris and

Co., 113 Ala. 506, 20 So. 950; Cobbs v. Norville, 227 Ala. 621, 151 So. 576, or declare that upon default the bill will stand dismissed. Simpson v. James R. Crowe, Post 27, American Legion, 230 Ala. 487, 161 So. 705; Wesson v. Taylor, 240 Ala. 284, 198 So. 848.

It is the better practice to decree that upon default there should be a foreclosure by sale. The decree should be modified so as to allow complainant thirty days in which to pay the amount ascertained to be necessary to redeem after crediting the same with the sum of $3,674 paid into court by complainant, and that the register pay over said sum to appellant. And that upon default in the payment of the balance due by complainant in that period the register shall proceed to sell the land described in the pleadings in this cause at public outcry to the highest and best bidder for cash between the hours of eleven A. M. and four P. M. at the courthouse door of Mobile County, section 723, Title 7, Code, after notice of the time, place and terms of sale is published for three successive weeks, section 714, Title 7, Code, in a newspaper of general circulation in said county. Hall v. Noble, 215 Ala. 444, 111 So. 14. Report of such sale shall be made by the register to the circuit court in equity, to which this cause is remanded for further proceedings. Those Code sections are not here controlling but suggestive. Parker v. Clayton, 248 Ala. 632, 29 So.2d 139.

▮▮▮ The general rule is that costs should be taxed against one suing to enforce an equity of redemption where the act of the redemptionee did not necessitate resort to equity, and he did not contest the relief sought. Macke v. Scaccia, 222 Ala. 359, 132 So. 880.

▮▮▮ Complainant offered and paid into court an amount of $3,674 claimed to be all that was due to redeem. That claim was decided against complainant and the sum of $4,342.27 was fixed as the principal amount. There was a difference of $668.27. There was also a controversy as to wheth-

er complainant was entitled to credit on account of a breach of warranty. That was decided against complainant on this appeal. Also as to whether complainant was entitled to recover in this suit for the deferred rentals under the oil lease which matured before the bill of complaint was filed. That was here decided against complainant. Also as to whether complainant was entitled to a personal judgment against appellant. That was decided against complainant. Appellant lost on its contention that all the deferred rentals were reserved and did not pass by its deed.

On the appeal in respect to the personal judgment rendered by the court in favor of the Snows against appellant, the Snows lost the contention on this appeal.

So that, the costs of this cause which have accrued to the time of this decision and decree, in the circuit court in equity and on appeal in that court and in this Court, should be divided so that appellant, complainant and the Snows each be taxed, respectively, with one-third thereof. Perdue v. Brooks Brothers, 85 Ala. 459, 5 So. 126. Any costs which may be caused by further proceedings in the execution of this decree should be taxed by the circuit court in equity in the exercise of its discretion.

The decree of the circuit court in equity should be modified in part and affirmed in part, and reversed and render in part and remanded to the circuit court in equity where further proceedings may be had if necessary in accordance with the decree here rendered.

The foregoing opinion was prepared by FOSTER, Supernumerary Judge of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

The decree of the circuit court, in equity, is modified and affirmed in part, and reversed and rendered in part and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.