Lacks appeals from a judgment rendered against him and in favor of Stribling which arose out of his sale of a subdivision lot to Mrs. Stribling and her husband
In 1960 W.C. McDaniel subdivided certain property that he owned near Leesburg, Alabama, and placed on record a plat thereof, entitled "W.C. McDaniel Lakeshore Property" (original plat). A public auction of the subdivision lots was conducted in *Page 928 
May 1960, where Lacks purchased some of the lots, including Lot 54. A few months thereafter, Lacks, McDaniel and other property owners were approached by officials of the Alabama State Highway Department — Mr. Hunt and Mr. Price — because backwater would inundate the existing roads to the subdivision The original plat contained an access road fifty feet in width between Lot 54 and Lots 2 and 3. Mr. Hunt and Mr. Price sought to "kill" that road and to locate another road between Lot 50 and Lot 51 by shifting all lines of Lots 51 through 54 fifty feet to the north
In their attempt to close the road between Lot 54 and Lots 2 and 3 and the opening of the new road, Mr. Price and Mr. Hunt required another employee of the highway department to prepare a plat (rearrangement plat), which was signed by Mr. McDaniel and the owners of Lots 51 through 54. The owners of Lots 2 and 3 were not contacted nor consulted about this matter, although access to their lots would be entirely eliminated if the originally platted road between them and Lot 54 was abolished, which is exactly what was attempted to be accomplished by the rearrangement plat. Lacks' signature to the rearrangement plat was simply an accommodation to the state. The rearrangement plat was recorded in the probate office
Lacks sold Lot 54 to Stribling and her husband, now deceased, in May 1973, for $1,500, its then reasonable value. In the joint deed to them, Lot 54 was described according to the original plat. Mrs. Stribling, through her husband's will, became the owner of her husband's one-half interest in Lot 54 upon his death. In the deed, Lacks agreed to forever warrant and defend the title to the property to the Striblings from every lawful claim. At the time of the sale Lacks provided the Striblings with a copy of the rearrangement plat and explained to them what had been done with reference to moving the road
The owners of Lots 2 and 3 filed the original complaint in this case, in essence averring that the rearrangement plat was inefficacious to close the road between Lot 54 and Lots 2 and 3 as platted on the original plat. They sought an adjudication that that road was still open in order that they might have access to their property. By a judgment dated April 15, 1980, the trial court agreed with that position, holding that the procedure for closing a road in a recorded, platted subdivision had not been followed. § 35-2-51, Code (1975)
In her third party complaint against Lacks, Stribling sought a reformation of the deed. She also contended that he was guilty of fraud or misrepresentation, and, additionally, that "[I]f in fact the said road or right of way for a road is in existence then . . . Lacks . . . is liable to her . . . for the loss of the land. . . ."
On October 15, 1980, the trial court rendered a judgment reforming Lacks' deed to Stribling so as to describe Lot 54 according to the rearrangement map and so as to exclude therefrom the fifty-foot right of way. The size of her lot at the front was, thereby, reduced to fifty feet instead of the original one hundred feet. Further judgment was rendered for Stribling and against Lacks for $3,000, as the reasonable value of the 50 X 255-foot strip of land lost from Lot 54. The following findings of fact were included therein:
 That although Stribling's deed describes the property conveyed as "lot 54 according to a plat recorded in Plat Book 5, page 22" the intent of Lacks and the understanding of Stribling was that the property conveyed was Lot 54 according to the rearrangement of the W.C. McDaniel Lakeshore Property, recorded in Plat Book 5 at page 31. This lot however was reduced in size by the reopening of the improperly closed road or street by order of this Court dated April 15, 1980, this road or street being a 50 foot strip evenly off the North side of Lot 54 according to Plat Book 5 at page 31 and constituting approximately forty per cent of the lot Stribling thought she purchased and that Lacks thought he sold to Stribling
Lacks' appeal is concerned only with the monetary judgment against him *Page 929 
His first contention is that Stribling's claim for fraud or misrepresentation is barred by the one year statute of limitations. However, we pretermit a decision on that issue since the trial court's judgment could have been based entirely upon Lacks' breach of the warranty contained in the deed, as to which the ten year statute would apply from the date of the accrual of her action. Lost Creek Coal Mineral Land Co. vHendon, 215 Ala. 212, 110 So. 308 (1926)
Lacks argues that the measure of damages in this case is the difference between the actual value of Lot 54 at the time ofsale and what it would have been had it been as represented
 The covenant in the deed to warrant and defend the title of the grantee and his successors against the lawful claims of all persons is in substance a covenant for possession and quiet enjoyment, and it is not broken so long as the grantee's enjoyment and possession are not interfered with. Oliver v. Bush, 125 Ala. 534, 27 So. 923. "It operates in futuro, unless the true owner is in actual possession at the time the covenant is entered into, in which case there is a breach eo instanti; it runs with the land, that is, it is intended for the benefit of the ultimate grantee in whose time it is broken, and there can be no breach except by an actual or constructive eviction."
Chicago, Mobile Development Co. v. G.C. Coggin Co., 259 Ala. 152,161, 66 So.2d 151, 157 (1953). Therefore, the proper time element in the damage formula is computed as of the date of eviction, not as of the time of sale. Here, the date of eviction was April 15, 1980, when the judgment was rendered declaring that the right of way for a road still existed between Lot 54 and Lots 2 and 3. Her action did not accrue until April 15, 1980
The Striblings paid $1,500 for the lot in 1972 and improved it specifically by constructing or installing a septic system, lights and water. Without objection from Lacks, Stribling stated that in 1977 she offered to sell the lot for $3,500, but then she decided not to sell it. She testified that her lot as diminished by the street "wouldn't be worth one dime. I would (only) have fifty feet left." Lacks testified that the value of the lot is more now than at the time of the sale in 1972
While the evidence is somewhat skimpy as to value, the judgment appealed from is presumed to be correct regarding the award, and we cannot substitute our opinion for that of the trial court unless that court's judgment is palpably wrong, manifestly unjust or is without supporting evidence. Andersonv. Blue Star Ready Mix, Inc., 391 So.2d 127 (Ala.Civ.App 1980). The monetary judgment against Lacks is neither unjust nor palpably wrong and it is supported by some competent evidence
The final contention of Lacks is that the trial court lacked authority to enter the October 15, 1980 judgment because the motion of Stribling upon which that judgment was predicated was untimely filed. In order to better comprehend this issue, some of the history of the proceedings in the trial court must be detailed
A few days after hearing the last oral testimony, the trial court rendered a judgment dated July 2, 1980, which denied any relief sought by Stribling. That order was not filed until July 9, 1980. At a time which is not apparent, the register typed the following upon the case action summary, "7-2-80 Order of the Court."
On August 8, 1980, Stribling filed a motion to alter, amend or vacate that judgment, or, in the alternative, for a new trial. By order dated August 13, 1980, the circuit court denied that motion, stating that the motion "comes too late." However, by order dated August 20, 1980, the trial court set aside its August 13 order and set the original motion for hearing Subsequently, on October 15, 1980, the court rendered judgment against Lacks
Rule 59, A.R.C.P. provides that a motion for a new trial, or to alter, amend or vacate the judgment, "shall be served not later than thirty days after the entry of the judgment." Among other methods authorized *Page 930 
by Rule 58, a judge may render his order or judgment by executing a separate written document, as was done in this case, and entry of the judgment must be made by the clerk or register. "Notation of a judgment or order on separately-maintained bench notes or in the civil docket or the filing of a separate judgment or order constitutes the entry of the judgment or order." Rule 58 (c), A.R.C.P
Here, the judgment dated July 2 was filed on July 9, but the "order of the court" was noted upon the case action summary as of July 2. Thus, Lacks contends that the August 8 motion came too late, that the register's action in typing the July 2 date on the case action summary constituted the entry of the judgment as of July 2, and, consequently, more than thirty days had expired between the judgment denying relief to Stribling and the filing of her August 8 motion. We do not agree
In the first place, the words "Order of Court" are inadequate to be an entry of the judgment. That notation is so unspecific as to be a nullity insofar as entering a judgment is concerned We cannot give more credence to a purely ministerial act of inadequately entering a judgment by a register than to the judicial act of rendering the same judgment by the trial court
A separate judgment may be signed by the trial judge, but it is not effective until he authorizes that it be filed with the clerk or register, even if the filing date is several days, weeks or even months later than the date reflected on the judgment. When a separate judgment is filed, the filing thereof constitutes the entry of the judgment and would take preference over an additional attempted entry thereof by the clerk or register by any other method of entering authorized by Rule 58 (c). To hold as contended by Lacks would mean that, if adequate time differed between the date of the entry by the clerk on the case action summary and the date of the filing of the separate judgment, the clerk could effectively eliminate a motion for a new trial (if the difference was more than thirty days) or even an appeal (if the difference was more than forty-two days) Such a construction is contrary to the spirit of modern judicial philosophy. Rule 1 (c), A.R.C.P.; Rule 1, A.R.A.P
We determine that the judgment dated July 2 was entered when it was filed by the register on July 9, that such entry prevails and we are not governed in this matter by the actions of the register in placing the July 2 date and "Order of the Court" on the case action summary, and that the Stribling motion of August 8 was timely filed
All of the contentions of Lacks' most learned and competent counsel have been duly considered and we find no error therein
We affirm
The foregoing opinion was prepared by retired circuit judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code (1975), and this opinion is hereby adopted as that of the court
AFFIRMED
All the Judges concur
 On Application for Rehearing