The plaintiff John Doe[1] appeals from the trial court's August 19, 1998, order requiring remittitur of a punitive-damages award to $10,000. We reverse and remand.
John Doe is a physician whose medical practice is limited to a particular specialty. Beginning about April 1995, Earby S. Markham began writing false statements about Doe on the restroom walls of two state parks and a hotel located in Baldwin County. Doe learned about the statements from a local police chief, who initially accused Doe of making the statements. The statements read, "Will pay for gay sex" and "Will pay for gay sex with young boys." The statements included Doe's home and office telephone numbers and the words "Ask for John." The statements on the restroom walls in the parks were accompanied by drawings that depicted homosexual acts.
Markham admitted in his answer to Doe's complaint and in open court that he had written the statements, that the statements were false, and that the statements were repulsive, offensive, disgusting, and repugnant. Markham also admitted in his answer and in open court that the statements were libelous, slanderous, and defamatory, and that he had published them with malice and with knowledge of their falsity or with gross and reckless disregard as to whether they were true or false. Markham said that he published his statements and drawings to injure Dr. Doe's personal and professional reputation and to cause him emotional distress.
Markham admitted that when he published the statements and drawings he knew that Doe had three small children. Doe testified at trial that he finally had to stop his children from answering his home telephone because of the number of obscene telephone calls that had been made to his home. Doe testified that sometimes, when his home telephone rang, both he and his wife would scream at the children, telling them not to answer the telephone. Doe testified that he still cringed when he heard a telephone ring. Doe further testified that his employees had received obscene telephone calls as a result of Markham's statements and drawings and that the calls had caused his office receptionist to become very upset. After Doe discovered that Markham was responsible for the statements and drawings and, therefore, the obscene calls, Doe explained to his employees what had happened.
On March 19, 1996, Doe filed a three-count complaint against Markham, charging him with libel and slander, the tort of outrage, and intentional interference with business relations. Markham filed an answer to Doe's complaint on July 1, 1996. *Page 759 
On September 18, 1997, Markham moved for a summary judgment; on October 21, 1997, the trial court entered a summary judgment for Markham on Doe's outrage claim.
Beginning on March 5, 1998, Doe's remaining claims were tried before a jury, with Judge Charles C. Partin presiding. At the close of the evidence, the court directed a verdict for Doe on the count alleging libel. On the libel count, the jury awarded Doe compensatory damages of $25,000 and punitive damages of $50,000. It found for Doe on the count alleging intentional interference with business relations, awarding compensatory damages of $25,001 and punitive damages of $100,000. The court, on March 6, 1998, made the following entry in the case action summary:
 "Came the parties with their attorneys, also came a jury of twelve good and lawful persons, who upon their oaths say as follows: `We, the jury, find for the plaintiff, [John Doe], as follows: with respect to Count I, libel: compensatory damages: $25,000.00, and punitive damages, $50,000.00; with respect to Count II, intentional interference with business relations: We, the jury, find for the plaintiff, [John Doe], as follows: Compensatory damages: $25,001.00, and punitive damages: $100,000.00. Whereupon, the court entered judgment in favor of the plaintiff, [John Doe], as follows with respect to Count I — libel: compensatory damages: $25,000.00, and punitive damages, $50,000.00; with respect to Count II, intentional interference with business relations: the court entered judgment in favor of [John Doe], as follows: compensatory damages: $25,001.00, and punitive damages: $100,000.00. The defendant is taxed with the cost of court . . . . The court sets April 21, 1998 . . . for hearing on the question of punitive damages."
(C.R. 81-82.) (Emphasis added.)
On April 3, 1998, Markham moved for a judgment notwithstanding the verdict or, in the alternative, to alter, amend, or vacate the judgment, or to grant him a new trial. Markham asked for a remittitur of the jury's punitive-damages award. Markham did not appear on April 21, 1998, for the hearing on punitive damages (i.e., the question whether the punitive-damages award was excessive),[2] and the trial court reset the hearing for May 21, 1998.
The trial court did not rule on Markham's posttrial motion until August 19, 1998, or until the motion had been pending for 138 days.[3] On that date, the trial court entered an order purporting to deny all relief sought in Markham's posttrial motion except as to the remittitur. The court ordered that the punitive-damages awards be remitted from a total of $150,000 to $10,000.
Doe moved, pursuant to Rule 60(b)(4), Ala.R.Civ.P., to vacate the August 19, 1998, order. The court denied the Rule 60(b) motion, stating, "[F]inal judgment on [the] jury verdict was not entered until [August 19, 1998]." Doe appealed from the order requiring a remittitur. *Page 760 
Doe first argues that the trial court lacked jurisdiction to order a remittitur of the punitive-damages award more that 90 days after Markham had filed his posttrial motion. We agree. Rule 59.1, Ala.R.Civ.P., reads:
 "No post-judgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record, or unless extended by the appellate court to which an appeal of the judgment would lie, and such time may be further extended for good cause shown. A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period."
(Emphasis added.)
Clearly, there are only two circumstances under which a posttrial motion may remain pending in the trial court for more than 90 days: (1) where the record reflects that the parties have given their express consent to allow the motion to remain pending beyond the 90th day; and (2) where the time for a ruling has been extended by the appropriate appellate court. Rule 59.1, Ala.R.Civ.P.; Greco v. Thyssen Min. Constr., Inc., 500 So.2d 1143,1145-46 (Ala.Civ.App. 1986). Neither of those circumstances occurred in this case. The trial court cannot allow a posttrial motion to remain pending for more than 90 days; at the end of the 90th day, the court loses its jurisdiction to entertain such a motion. Ex parte Hornsby, 663 So.2d 966 (Ala. 1995); Ex parteJohnson Land Co., 561 So.2d 506, 508 (Ala. 1990). The major purpose of Rule 59.1 is to ensure that posttrial motions do not remain pending in the trial courts for a long time unless the parties have consented to the delay. Edgar v. State,646 So.2d 683 (Ala. 1994).
Here, the trial court attempted to avoid the application of Rule 59.1 by stating that no judgment had been entered until August 19, 1998, when the court issued its order requiring a remittitur.[4] That statement, however, is contrary to Rule 58, Ala.R.Civ.P., which pertains to the rendition and entry of judgments and orders, and is contrary to case law construing this rule. Rule 58(c) reads:
 "(c) Entry of Judgment or Order. Upon rendition of a judgment or order as provided in subdivision (a) of this rule, unless it contains a specific direction otherwise or is subject to the provisions of Rule 54(b), the clerk shall note such judgment or order forthwith in the civil docket if separately maintained. Notation of a judgment or order on separately maintained bench notes or in the civil docket or the filing of a separate judgment or order constitutes the entry of the judgment or order. The entry of the judgment or order shall not be delayed for the taxing of costs."
(Emphasis added.) Rule 58(a) reads:
 "(a) Rendition of Judgments and Orders. A judge may render an order or judgment: (1) by notation thereof upon bench notes without any other or further written document or (2) by executing a separate written document, or (3) by including the order or judgment in the opinion or memorandum, or (4) by simply appending to the opinion or memorandum or including therein direction as to the order or judgment sought to be entered."
(Emphasis added.)
This Court has recently explained:
 "Pursuant to Rule 58(c), Ala.R.Civ.P., `[n]otation of a judgment or order on separately maintained bench notes or in the civil docket or the filing of a separate *Page 761 
judgment or order constitutes the entry of the judgment or order.' `Rule 58 . . . obliterate[s] any distinction between [the ministerial act of] entry and [the judicial act] of rendition of judgment and . . . make[s] the operative event the act of the judge.' 2 Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, § 58.2, at 255 (3d ed. 1996). However, when a judge renders a judgment by a separate written order, that judgment is not entered until it is filed in the clerk's office. See Lacks v. Stribling, 406 So.2d 926, 930 (Ala.Civ.App.), cert. denied, 406 So.2d 932 (Ala. 1981). Thus, although under Rule 58(c), rendition and entry of judgment occur simultaneously when the trial judge notes the judgment on the case action summary sheet or on separately maintained bench notes, see Rule 58, Ala.R.Civ.P., Committee Comments on 1973 Adoption, the Rule nevertheless preserves the distinction between rendition and entry of judgment when the trial judge renders judgment `by executing a separate written document,' Rule 58(a), Ala.R.Civ.P. In this case, the trial judge rendered his judgment on the jury verdicts by executing two separate orders. Therefore, the judgment against the defendants was not entered until the two orders were filed in the clerk's office on January 12, 1999. Accordingly, the notice of appeal was timely."
Smith v. Jackson, 770 So.2d 1068 at 1072 (Ala. 2000) (emphasis added). See also, Asam v. City of Tuscaloosa,585 So.2d 60, 60-61 (Ala.Civ.App. 1991), in which the Court of Civil Appeals wrote:
 "Rule 58(c), [Ala.] R.Civ.P., provides that a judgment is entered as soon as it is noted on the case action summary. The entry of an order in this manner, when signed by the trial judge, evidences the court's intention to adjudicate as well as the substance of the adjudication, Cochran v. Wood, 504 So.2d 297 (Ala.Civ.App. 1986), and constitutes the entry of judgment. Dudley v. State Dep't of Human Resources, 555 So.2d 1121 (Ala.Civ.App. 1989)."
Id. (Emphasis added.)
Rule 60(b)(4), Ala.R.Civ.P., authorizes relief from a void judgment. Under Rule 60(b)(4), "[i]f the judgment is valid, it must stand; if it is void, it must be set aside." Insurance Mgt. Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209 (Ala. 1991);Seventh Wonder v. Southbound Records, Inc., 364 So.2d 1173 (Ala. 1978).
The defendant's posttrial motion was denied on the 90th day after it was filed. See Rule 59.1. Therefore, at the end of that 90th day the judgment of March 6, 1998, became final. The court had no jurisdiction to rule on the defendant's motion on the 138th day. Thus, the August 19, 1998, order purporting to require a remittitur is a nullity. Borders v. Borders, 702 So.2d 147, 148
(Ala.Civ.App. 1997). Because that August 19, 1998, order was void, the trial court should have granted Doe's Rule 60(b)(4) motion to vacate it. That order is set aside, and this case is remanded for an order consistent with this opinion.
VOID ORDER SET ASIDE; CASE REMANDED.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, and Johnstone, JJ., concur.
[1] The plaintiff filed a motion to preserve his anonymity and to be designated as "John Doe." This Court granted the motion on November 6, 1998, and ordered that "in all public documents, including the briefs, the appellant shall be referred to as `John Doe.'"
[2] Doe asserts that Markham simply failed to appear. Markham asserts that he was unable to present evidence on his posttrial motions, including his request for remittitur, because the clerk's office failed "to docket these motions" or "post them to the court file." Because of the clerk's error, Markham says, the trial court "was not in position to entertain" these motions and, in fact, was unaware that the motions existed. The trial court rescheduled the hearing on the question of punitive damages to May 21, 1998, without stating a reason for doing so. (C.R. 68-71; 81.)
[3] The trial court's case action summary does not state that the parties had agreed for the trial court to let Markham's posttrial motion remain pending beyond the 90-day period prescribed by Rule 59.1, Ala.R.Civ.P. In fact, the case action summary contains no entries after April 30, 1998, when the court reset the punitive-damages hearing for May 21, 1998, and August 19, 1998, when the trial court entered the remittitur order now at issue.
[4] See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986); and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).