770 So.2d 1068 (2000)
Mac SMITH and Mac Smith, Inc.
v.
John JACKSON.
1981342
Supreme Court of Alabama.
April 14, 2000.
*1070 James T. Baxter III of Ables, Baxter, Parker & Hall, P.C., Huntsville, for appellants.
James R. Cooper, Jr., of Cooper & Cooper, Montgomery, for appellee.
SEE, Justice.
John Jackson and his wife Lisa Jackson filed this action against Mac Smith, Inc., and Mac Smith individually (the owner and operator of Mac Smith, Inc.), asserting claims relating to the fact that they were dissatisfied with the construction of their home, which the defendants had built for them. Mr. Jackson alleged that Mac Smith had breached a contract whereby he had agreed to construct the Jacksons' home according to certain specifications. Both Mr. and Mrs. Jackson alleged that Mac Smith, Inc., had breached an express warranty regarding the quality of workmanship and materials to be provided in the construction of the home. Following a trial, the jury returned a verdict in favor of Mr. Jackson and against Mac Smith individually for breach of the contract and in favor of Mr. Jackson and against Mac Smith, Inc., for breach of the express warranty. The jury assessed a total of $275,000 in damages: $40,000 for breach of the contract, $135,000 for breach of the express warranty, and $100,000 for emotional distress. The jury found in favor of Mac Smith, Inc., on Mrs. Jackson's breach-of-express-warranty claim. The trial court rendered a judgment on the verdict. The parties later reached a settlement regarding the emotional-distress damages.
The defendants appealed. They argue that the judgment must be reversed for several reasons.[1] However, we need only *1071 address one of those arguments: that the Jacksons exercised their peremptory strikes in a racially discriminatory manner, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. The Jacksons used their peremptory strikes to remove all white veniremembers. The trial court required the Jacksons to state race-neutral reasons for those strikes. The Jacksons offered explanations for each strike, and the court found that their explanations were race-neutral and not pretextual. We hold that the trial court's finding was clearly erroneous as to one of those explanations, and we therefore reverse the judgment and remand the case for a new trial.

I.
As a threshold matter, we reject Mr. Jackson's argument that this Court is without jurisdiction to entertain this appeal. He argues that the notice of appeal was not timely. On November 16, 1998, by two separate written orders, one pertaining to each defendant, the trial court rendered its judgment on the jury's verdict of that date. However, the judgment (consisting of the two written orders) was not filed in the clerk's office until January 12, 1999. On January 29, the defendants filed a motion for a judgment as a matter of law or, in the alternative, for a new trial.[2] The trial court denied that motion on March 31. The defendants filed their notice of appeal on May 12-42 days after March 31.
Mr. Jackson argues that the judgment was entered on November 16, 1998, and that, therefore, the defendants' January 29, 1999, motion was not timely and did not toll the running of the time allowed for filing a notice of appeal. See Rule 4(a)(3), Ala. R.App. P. Therefore, he argues, the defendants' May 12, 1999, notice of appeal was not timely and this Court does not have jurisdiction of this appeal.
The defendants argue that the judgment against them was entered on January 12, 1999, when the two written orders were filed in the clerk's office. Therefore, they argue, their January 29 motion was timely; that motion tolled the running of the time allowed for filing a notice of appeal; and their notice of appeal was timely because it was filed on the 42nd day after the March 31 denial of their January 29 motion. We agree.
Pursuant to Rule 58(c), Ala. R. Civ. P., "[n]otation of a judgment or order on separately maintained bench notes or in the civil docket or the filing of a separate judgment or order constitutes the entry of the judgment or order." "Rule 58 ... obliterate[s] any distinction between [the ministerial act of] entry and [the judicial act] of rendition of judgment and ... make[s] the operative event the act of the judge." 2 Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, § 58.2, at 255 (3d ed. 1996). However, when a judge renders a judgment by a separate written order, that judgment is not entered until it is filed in the clerk's office. See Lacks v. Stribling, 406 So.2d 926, 930 (Ala.Civ.App.), cert. denied, 406 So.2d 932 (Ala.1981). Thus, although under Rule 58(c), rendition and entry of judgment occur simultaneously when the *1072 trial judge notes the judgment on the case action summary sheet or on separately maintained bench notes, see Rule 58, Ala. R. Civ. P., Committee Comments on 1973 Adoption, the Rule nevertheless preserves the distinction between rendition and entry of judgment when the trial judge renders judgment "by executing a separate written document," Rule 58(a), Ala. R. Civ. P. In this case, the trial judge rendered his judgment on the jury verdicts by executing two separate orders. Therefore, the judgment against the defendants was not entered until the two orders were filed in the clerk's office on January 12, 1999. Accordingly, the notice of appeal was timely.

II.
The defendants argue that the Jacksons exercised their peremptory challenges in a racially discriminatory manner, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. The jury venire was composed of 8 white persons and 29 black persons. The Jacksons exercised peremptory challenges against all eight white veniremembers. The defendants made a Batson objection, and the trial court required the Jacksons to provide race-neutral reasons for each of the eight contested challenges. The trial court found that the Jacksons' stated reasons were race-neutral, were not pretextual, and were based on information disclosed during voir dire examination. On appeal, the defendants argue that, as to three of the white veniremembers, the Jacksons' stated reasons were pretextual and were not based on information disclosed during voir dire. With respect to one of the veniremembers, we agree.
The Jacksons' attorney offered the following reason for striking veniremember M.H.:
"She worked for the Welch's company selling baby stuff all up and down through this area for years. I don't know how much stuff she sold to every person in the county including the Smiths. You have got toyou know yourself when you sell baby stuff to these people who are now defendants, I thought that whether or not she would admit it you keep seeing everybody as little Jimmy Smith or little Mac Smith or something like that."
There was no information disclosed during voir dire concerning M.H.'s alleged past employment with Welch's or her having sold "baby stuff" to Mac Smith or his family. The Jacksons' attorney did, however, ask the veniremembers during voir dire whether any of them knew either of the Jacksons. M.H. did not indicate that she did.
The general rule under Alabama law is that "the party alleging a discriminatory use of peremptory challenges bears the initial burden of establishing a prima facie case of discrimination." Looney v. Davis, 721 So.2d 152, 164 (Ala.1998) (citing Ex parte Branch, 526 So.2d 609, 622 (Ala. 1987). "After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate on the basis of race." Id. (citing Branch, 526 So.2d at 623)). The burden then falls upon the party against whom the prima facie case is established to "articulat[e] a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory." Id. (quoting Branch, 526 So.2d at 623) (emphasis omitted). However, when the trial court orders the party against whom a Batson objection is directed to state race-neutral reasons for his peremptory challenges, "the preliminary issue [whether the objecting party established] a prima facie case [of racial discrimination in the exercise of peremptory challenges] becomes moot and this Court will proceed directly to an evaluation of the explanations given." Id. at 164.
Under Alabama law, the trial judge must "evaluat[e] the evidence and explanations presented" and "determine whether the explanations are sufficient to overcome *1073 the presumption of bias." Branch, 526 So.2d at 624. "The trial judge cannot merely accept the specific reasons given... at face value; the judge must consider whether the facially neutral explanations are contrived to avoid admitting the acts of group discrimination." Id.
This Court will not overturn "[t]he trial court's ruling on the question whether the responding party offered legitimate race-neutral reasons ... unless it is clearly erroneous." Looney, 721 So.2d at 164. "However, `intuitive judgment or suspicion by [the proponent of the strike] is insufficient to rebut the presumption of discrimination.'" Id. at 165 (quoting Branch, 526 So.2d at 623). Therefore, "strikes based upon counsel's mere suspicion alone that a veniremember has a relationship that would constitute a valid, race-neutral reason will not be upheld, especially if on voir dire examination there was no inquiry into whether the suspected relationship actually exists." Id.
In Looney v. Davis, this Court held that the trial court had abused its discretion in finding that the reason given by the plaintiffs attorney for striking a veniremember was legitimate and race-neutral. 721 So.2d at 164. The explanation given by the plaintiffs attorney was that it was his "judgment that [the potential juror] would know the [defendant's] family from the country club as well as social activities." Id. at 163. However, when the plaintiffs attorney asked the members of the venire whether any of them knew the defendant and whether any of them were members of the country club to which the defendant belonged, that veniremember did not indicate that he knew the defendant or that he was a member of the country club. Id.
Similarly, in this case, the explanation given by the Jacksons' attorney as to why he struck M.H. was not based on information disclosed during voir dire. The explanation given by the Jacksons' attorney is somewhat cryptic, but it appears that his reason for asserting a peremptory challenge against M.H. was either that M.H. knew Mac Smith because she had in fact sold "baby stuff" to him or to his family, or that M.H.'s former occupational experiences would somehow influence her to look upon Smith more favorably than upon the Jacksons.
If M.H. had in fact sold "baby stuff" to Mac Smith or his family, and that fact had been disclosed during voir dire, we might accept the trial court's finding that the reason offered by the Jacksons' attorney was legitimate and race-neutral. See Looney, 721 So.2d at 165 (noting that "`[s]trikes based on the veniremember's relationship to or acquaintance with the defendant or with the defendant's witnesses have generally been upheld'") (quoting Rowe v. State, 625 So.2d 1210, 1211 (Ala.Crim.App.1993)). The Jacksons' attorney, however, could easily have ascertained during voir dire whether that was a fact, but failed to do so. Therefore, we must conclude that, to the extent the explanation given by the Jacksons' attorney can be understood as implying that M.H. knew Mac Smith, it was based on "intuitive judgment or suspicion" and did not constitute a legitimate, race-neutral reason for the peremptory strike. Looney, 721 So.2d at 165.
To the extent the explanation given by the Jacksons' attorney can be understood as implying that M.H. would be influenced by her former occupation to look more favorably upon Mac Smith than upon the Jacksons, it also fails to constitute "a clear, specific, and legitimate reason for the challenge which relates to the particular case ... and which is nondiscriminatory." Branch, 526 So.2d at 623 (emphasis omitted). Although a veniremember's past or present occupation can be a legitimate, race-neutral reason for a peremptory strike, see Burlington Northern R.R. v. Whitt, 575 So.2d 1011, 1018 (Ala.1990), cert. denied, 499 U.S. 948, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991), "strikes allegedly based upon a veniremember's occupation have not been upheld where the employment *1074 does not appear in any way to `relate[] to the particular case to be tried.'" Looney, 721 So.2d at 166 (quoting Branch, 526 So.2d at 623). The Jacksons' attorney offered no reason why M.H.'s former occupation of selling "baby stuff" was relevant to this case involving home construction, and we do not perceive any such reason. Therefore, we hold that, under the facts of this case, the trial court abused its discretion in finding that the reasons given by the Jacksons' counsel for striking M.H. were not pretextual.
This Court has stated that "the removal of even one juror for a racially discriminatory reason is a violation of the equal protection rights of both the excluded juror and the party challenging the peremptory strike." Looney, 721 So.2d at 163 (citing Ex parte Jackson, 640 So.2d 1050 (Ala.1993), and Ex parte Bird, 594 So.2d 676 (Ala.1991)). Because the trial court erred in accepting as race-neutral the Jacksons' explanation for striking veniremember M.H., we reverse the trial court's judgment and remand this case for a new trial.
REVERSED AND REMANDED.
HOOPER, C.J., and COOK, LYONS, and BROWN, JJ., concur.
MADDOX, HOUSTON, JOHNSTONE, and ENGLAND, JJ., concur specially.
MADDOX, Justice (concurring specially).
I was almost persuaded to dissent from the holding regarding the defendants' challenge to the plaintiffs' peremptory strike of prospective juror M.H., because of the principle of law that we must give great deference to the finding of the trial judge. However, I must agree that the record in this case compels us to reverse the judgment.
This Court has reviewed other cases in which a party had used all or most of its peremptory challenges to remove members of a particular race from the jury venire. See, Avery v. State, 545 So.2d 123 (Ala.Crim.App.1988). In Avery, the prosecution used all of its strikes to remove blacks from the jury venire. Because the trial court had not had the guidance of this Court's decision in Ex parte Branch, 526 So.2d 609 (Ala.1987), the Court of Criminal Appeals initially remanded the case to allow the prosecution to show the trial court, if it could, why it had used its 12 peremptory strikes to remove blacks from the venire, the court noting that no black had served on the jury. A remand in this present case would not be appropriate, because Ex parte Branch and its progeny have clearly established guidelines for trial courts to use when faced with a Batson or Branch challenge. In Avery, on return to the remand, the Court of Criminal Appeals examined the record and concluded, as this Court does today in this present case, that the judgment had to be reversed.[3]
*1075 Although I concur in today's opinion, I must state once again that I believe Batson is consistent with what I understand to be the policy of this Statethat jurors should be selected from a list that contains a fair cross-section of the area served by the court and that any form of discrimination against a particular juror on account of race, color, religion, sex, national origin, or economic status is prohibited. I must advance once again, as I have before, a simple solution to most problems that arise when either party claims a Batson violation. In a special concurrence in Ex parte Bruner, 681 So.2d 173 (Ala.1996), I posed the following question: "Why has Batson caused judges and lawyers so much difficulty and why do members of the Supreme Court of the United States still disagree on what Batson said?" Id. at 186. I then answered the question and set out my personal views on what the law of this State and the law of the United States required in the use of peremptory challenges in the selection of trial juries. I then proposed a solution that I felt would eliminate substantially a result similar to the one that is required here. In Bruner, I wrote:
"Although I believe Batson problems will subside in the trial courts, I want to state once again what I stated in Huntley v. State, 627 So.2d 1013, 1017-18 (Ala.1992), in a special concurrence, with the hope that it might help prevent Batson-generated problems:
"`I have always thought that many Batson problems could be eliminated in both criminal and civil cases by the following procedure:
"`(1) Requiring prospective jurors, when they are summoned to appear or when they assemble, to fill out a written questionnaire that would provide substantial background information to the parties to use in exercising their peremptory strikes. In addition to a general questionnaire, the parties might have specific questions, because of the particular nature of the case to be tried, that they would want prospective jurors to answer.
"`(2) Limiting the number of peremptory strikes available by limiting the size of the venire from which the parties begin striking. In a majority of civil and criminal cases, the rules of procedure only require 24 qualified jurors to be on the panel when the parties begin to exercise their peremptory challenges.
"`(3) Adopting the rule used in Federal courts that prohibits so-called "back striking"; that is, placing 12 qualified prospective jurors in the jury box, and having the parties decide how many of those 12 they separately and severally want to strike. If a prospective juror was not removed from the box by either side, that juror could not be removed later.'"
681 So.2d at 190.
HOUSTON, Justice (concurring specially).
I agree with John Jackson's discussion in his brief about peremptory challenges: "[A]n attorney should be able to [strike] a juror based upon what he hears and how [members of the venire] respond by nonverbal means." See Ex parte Branch, 526 So.2d 609, 632-34 (Ala.1987) (Houston, J., dissenting); see also Ex parte Weaver, 682 So.2d 493 (Ala.1996) (Houston, J., dissenting); *1076 Ex parte Bruner, 681 So.2d 173, 194 (Ala.1996) (Houston, J., concurring in the result); Nix v. Chilton County Comm'n, 667 So.2d 719, 721-22 (Ala.1995) (Houston, J., concurring in the result); Ex parte Thomas, 659 So.2d 3, 8-9 (Ala.1994) (Houston, J., concurring in the result); Ex parte Bankhead, 625 So.2d 1146, 1149 (Ala. 1993) (Houston, J., dissenting); Ex parte Demunn, 627 So.2d 1010, 1010-11 (Ala. 1992) (Houston, J., concurring in the result); Huntley v. State, 627 So.2d 1013, 1018-19 (Ala.1992) (Houston, J., dissenting); Ex parte Thomas, 601 So.2d 56, 59 (Ala.1992) (Houston, J., dissenting); Ex parte Adkins, 600 So.2d 1067, 1072 (Ala. 1992) (Houston, J., concurring in the result); Moore v. Ray Sumlin Constr. Co., 570 So.2d 573, 575 (Ala.1990) (Houston, J., dissenting); Thomas v. Diversified Contractors, Inc., 551 So.2d 343, 349-53 (Ala. 1989) (Houston, J., dissenting); Van Scoy v. State, 555 So.2d 195 (Ala.1989) (Houston, J., dissenting); Ex parte Jackson, 516 So.2d 768, 773 (Ala.1986) (Houston, J., concurring in the result). But that is a battle I fought and lost; I have long since joined my fellow Justices in recognizing that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny, substantially changed, if they did not eliminate, the peremptory challenge as it was known prior to Batson.
ENGLAND, Justice (concurring specially).
I write to voice my concern about this Court's reviewing matters that were not presented for a ruling by the trial court.
The Court upholds the defendants' Batson challenge on the ground that the reasons articulated by the Jacksons' attorney for striking M.H. were pretextual and that the trial court abused its discretion in ruling to the contrary. While I agree that the reasons provided in the analysis of this question would require the court to grant the Batson challenge, I am concerned that the defendants did not at trial challenge the reasons given by the Jacksons' attorney and bring them to the attention of the trial court.
This Court recently stated in Ex parte Davidson, [Ms. 1980430, February 11, 2000] ___ So.2d ___ (Ala.2000):
"Our review of the record indicates that some of the reasons given by the prosecutor for striking black veniremembers were suspect and that some of the reasons could have been pretextual. However, Davidson did not challenge these reasons and did not bring them to the trial court's attention. The trial court should not now be held in error based on claims that were never presented for its review."
___ So.2d at ___. It appears that the Court today does not apply the rule expressed in Davidson, i.e., the rule that the trial court will not be held in error based on claims not presented for its review. I write to express my concern for the lack of consistency in our review of Batson challenges.
JOHNSTONE, J., concurs.
NOTES
[1] Specifically, the defendants argue that the trial court erred in excluding deposition testimony of their expert witness, who was more than 100 miles away during the trial; that the trial court erred in denying their motion for a mistrial made after Mr. Jackson referred in his testimony to the fact that the framing subcontractor had liability insurance that might have covered the Jacksons' claims; that the jury's verdict in favor of Mr. Jackson on his breach-of-warranty claim and against Mrs. Jackson on her breach-of-warranty claim is inconsistent; that Mr. Jackson was not entitled to recover damages for both breach of the contract and breach of the express warranty, and that the trial court erred in refusing their requested jury instruction to that effect; that the damages for breach of warranty exceeded the warranty's express limitation on damages; that the damages award was not supported by the evidence, because Mr. Jackson offered no proof of the difference between the fair market value of the house as it should have been constructed and the fair market value of the house as it was actually constructed; and that the damages were excessive because they were greater than the amount necessary to put Mr. Jackson in the position he would have been in if the contract had never been breached, i.e., the amount Mr. Jackson paid to the defendants plus the amount he paid to have the partially constructed house removed from his property.
[2] The defendants had filed a similar motion on December 15, 1998, which the trial judge denied on December 18 by writing "denied" on the front of the motion and signing and dating his notation. The trial judge later left office, and on January 21, 1999, the defendants filed a motion for "reconsideration" of the December 18 denial, asserting that the writing of the word "denial" had been a clerical error and that the trial judge should have scheduled a hearing on the motion. A new judge was appointed, and that judge granted that motion. These facts, however, are not relevant to the issue whether the defendants' notice of appeal was timely, because, as we explain later, the judgment was not entered until January 12, 1999.
[3] In Avery, the Court of Criminal Appeals, based on the record before it, stated:

"We have considered the reasons given by the prosecutor for the peremptory striking of all blacks. We conclude that sufficient race-neutral reasons were given for striking black venirepersons number 2, 4, 43, 46, and 74. Number 2 knows the appellant and is about his age, number 4 lives next door to appellant, number 43 is related to appellant, number 46 has difficulty hearing, and number 74 is a defendant in a pending criminal case. As to the remaining venirepersons, number 33, 42, 108, 125, 104, 122, and 118, we are troubled by the reasons given and have grave doubts as to their legitimacy. Venirepersons number 33, 42, 108, and 125 were struck for the same alleged reason, i.e., that his or her demeanor, attitude, and body language indicated a negative attitude toward the prosecutor and the state's case. The reasons given for striking number 104 were that the venireperson is the same age as appellant and that a family with a similar name is under investigation. Number 122 was struck because he has the same last name as defendants in prior cases, and number 118 was struck because he is the same age as appellant.
"An examination of the voir dire questioning shows a complete lack of meaningful questions directed to the black venirepersons and related to the reasons given for striking them. `A prosecutor's failure to engage black prospective jurors "in more than desultory voir dire, or indeed to ask them any questions at all," before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias.'" People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 111, 230 Cal. Rptr. 656 (1986). Our supreme court in Ex parte Branch observed that `a lack of questioning to the challenged juror, or a lack of meaningful questions' is a consideration to support the finding that the proffered explanations are a `sham or pretext.' 526 So.2d at 623, 624."
545 So.2d at 126-27.