[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1105 
 On Application for Rehearing
The opinion of August 4, 2000, is withdrawn, and the following is substituted therefor.
The plaintiffs, Lewis D. Oblander and Jane Oblander, appeal from a judgment in favor of the defendant, USAA Casualty Insurance Company ("USAA"), arguing, among other things, that based on Batson v. Kentucky,476 U.S. 79 (1986), the trial court erred in denying their challenge to USAA's use of peremptory strikes. This case was transferred to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The Oblanders sued USAA, seeking benefits under the uninsured-motorist provision of their insurance policy with USAA, alleging that Mrs. Oblander had been injured by a phantom automobile while riding her bicycle. USAA contended that Mrs. Oblander had been injured when she had a seizure and fell off her bicycle. The jury returned a verdict in favor of USAA. *Page 1106 
Voir dire examination began with the trial court's asking the jurors if any of them were related to or knew any of the parties or witnesses involved in the case. The trial court then asked if any of the jurors had a moral, religious, or philosophical belief that they could not sit in judgment of another person. Four jurors, who stated that they were not able to sit in judgment, were later struck for cause. Two of the jurors struck for cause were black, leaving eight blacks on the venire. Counsel for the Oblanders then asked if the fact that Mrs. Oblander had not been wearing a helmet would affect their judgment or if they had ever been involved in a bicycle wreck on asphalt.
Counsel for USAA asked if any juror had ever been a plaintiff in a lawsuit, had ever had a claim that had been resolved without having to file a lawsuit, had ever had a seizure disorder, or had ever been treated for head injuries. Counsel for USAA asked if any juror had served on a jury before. Counsel for USAA then asked the jurors if sympathy or the fact that USAA was a corporation would influence their verdict, or if any juror had had a dispute with an insurance company. USAA's counsel asked the jurors if they could render an impartial verdict if the evidence did not support the Oblanders' claim that a car had been involved, or if Mrs. Oblander had contributed to her injuries.
The jurors were dismissed from the courtroom and a jury was struck. Counsel for USAA used six of its seven peremptory challenges to strike blacks from the jury. Counsel for the Oblanders made a Batson
objection. The trial court then asked the parties to stipulate that both the Oblanders and USAA's representatives were white, and then asked counsel for USAA to respond.
 "[USAA's counsel]: The point just raised by the Court, I'm not sure where Batson fits into the concept of the parties involved in this lawsuit, but my experience in dealing with Batson is I can respond if the Court so desires with my explanations of each of the strikes I made as to the black individuals on the jury venire. I am not sure if that's what you have asked me.
 "COURT: Well, I think the burden is on the Plaintiff, the challenger, to make a prima facie showing.
 "[OBLANDERS' counsel]: Just for the record, Your Honor, I believe that he is right in that once we make the prima facie showing, the Court then has to find that we have made a prima facie case and order the Defendants to respond.
"COURT: I see.
 "[USAA's counsel]: In response to the prima facie evidence, I can't strike everybody that had a bicycle accident and everybody that was a plaintiff in a lawsuit. That seemed to be the distinction that he went through with regard to all of these people.
 "And I did not strike based on race. I struck based on other aspects. And whether or not a juror commented, there is other evidence that I have relative to —
 "COURT: Let me be sure that I keep it in order. Now, the burden — should make prima facie showing is on the challenger [sic].
"[OBLANDERS' counsel]: Yes, Your Honor.
"COURT: Which, in this case, is the Plaintiff.
"[OBLANDERS' counsel]: Yes, Your Honor.
 "COURT: Then you say the procedure calls for the Court to determine if a prima facie basis has been made? *Page 1107 
"[OBLANDERS' counsel]: Yes, Your Honor.
"COURT: All right.
 "[OBLANDERS' counsel]: And if I might, Your Honor, the reason I know is I just wrote a brief to the Supreme Court in another case. We don't have — regardless of the color of our client — the color of our client is irregardless [sic], does not matter.
 "The question is whether or not their strikes were consistent or were for a reason. Did we show — I apologize for not standing, Judge.
 "Did we show that their strikes for some reason were not — (a) were inconsistent or, (b) did not have a cause. And I believe we have because, and there are cases on point here, that if they strike somebody without a cause they — or without a reason who didn't answer a question particularly, they have to give a reason why they would strike them. Or that is prima facie evidence — if someone doesn't answer any questions, then that's prima facie evidence that they were — and if they're black, then you add that to the other factors here, that they struck in order every black except the one that we struck, then that's prima facie evidence.
 "Now, I think we've shown that and the Court has to say if you agree with me that we have shown a prima facie case. I believe they have shown a prima facie case. It's now up to [counsel for USAA], can you give me a reason for each of your strikes that are consistent or show that they were not race intended.
 "COURT: All right. Well, I will accept your statement as to the procedure being correct. And then I will find that relative to the one — the three jurors who answered no questions, or perhaps relative to the entire strikes, that there is a prima facie case.
"Now let me hear from the Defense.
 "[USAA's counsel]: Judge, I circled here in red the ones he read through, so I hope I address each one.
 "Juror number 63, [J.A.], was stricken as a result of my paralegal pointing out to me that he had been coughing throughout the selection process. I had some concern of his health in light of the health of Ms. Oblander that we'll be dealing with in this case.
 "[Juror number 64, V.D.], is a cashier and separated, if you recall, from her introduction to us. I had some concern with her marital status and the marital status of Mrs. Oblander as it now exists.
 "Juror number 71 is [D.R.]. She is not married. That's — I think that's now the status of Mrs. Oblander. Some concern about her being from a low-income position and my notes that I was concerned she didn't have any comments.
 "Juror number 75, [A.G.] stricken primarily because she is a nurse.
 "Juror number — and also because she had fallen from a bike.
 "Juror number 80, [M.P.] was stricken because he had been involved in a breach-of-contract claim and had a fall from a bicycle.
 "Juror number 88 [B.W.] was stricken because she is single, not married, but listed herself as a homemaker. I had some concern with what that meant.
"I believe that addresses all of them.
"COURT: All right. I deny the Batson challenge.
 "[OBLANDERS' COUNSEL]: May we respond for the record, Your Honor?
"COURT: All right.
 "[OBLANDERS' COUNSEL]: Just for the record. Because I'm not sure what she took on the record from their *Page 1108 
responses during voir dire. So for the record, Your Honor, he gives as a reason, I'll go in reverse order with number 88, [B.W.], because she was single and listed as a homemaker. When in fact, number 61 [S.W.],[1] who was a white female, who also happened to be single listed as a homemaker, he did not strike.
 "In addition, the others we have listed were not — I didn't have taken down as having given a response to being married were number — I don't have [G.C.], number 86, listed as having been married, who they did not strike; nor [Sa. W.], who was also white, did not list a husband. I don't have [R.G.], number 70, as listing a spouse, who was also white — a white male. I don't have number 67, [H.J.], listed as having a spouse.
 "Going next up in order, he lists that he struck [Juror number 80, M.P.] because he was involved in a breach-of-contract claim, and fell off a bike. And the Court heard testimony concerning the breach of contract and the Court even requested and inquired as to [N.E.] who had indicated that they had had a claim — a small-claims court case where basically she was listed as a breach-of-contract claim. And — well, at least that one. And then there were several others who had bike wrecks who were white and who he did not strike, including [M.K.], number 66; [A.G.], number 70, said he wrecked his [bike] going pretty fast; [A.G.], number — I'm sorry. That was a black lady they struck.
 "Let's see. [T.M.] wrecked a bike. They didn't strike her. She was a white female.
 "The next was they said they struck — they struck [A.G.], number 75, first because she was a nurse, and then because she had wrecked her bike. Well, she was a nurse. And I don't recall what difference that would make. If it's the fact that she is — somehow or another she is in the medical business, although a weaker analogy, [S.T.], number 69 worked for Cottage Hill Dental Health as an assistant manager, so she was in the medical field; as was somebody else who worked for the University of South Alabama Medical Center. I don't remember. But there were no other nurses. So that may have been true. But she was certainly not the only one that fell off the bike as listed earlier.
 "Again, they struck — the only reason given for not — for striking [D.R.], number 71, was because he was not married. And I have previously listed several people who were not married and who they did not strike, but who were white, including [Sa. W.] and [H.J.] and the others who I listed earlier for that excuse, with regard to [B.W.]. And the same would apply for —
". . . .
 "[OBLANDERS' COUNSEL]: [V.D.] and [J.A.]. Excuses given for them being separated. And then [J.A.], saying that he was coughing during the trial — I mean, during voir dire, I certainly don't remember that. And I think that that is not a very well taken exception to say that someone is coughing, therefore, they can't qualify as a juror.
 "COURT: All right, gentlemen. Thank you. I deny the motion."
The United States Constitution prohibits a prosecutor from exercising his peremptory challenges in a racially *Page 1109 
discriminatory manner. Ex parte Branch, 526 So.2d 609,621 (Ala. 1987)[2] (interpreting Batson and Exparte Jackson, 516 So.2d 768 (Ala. 1986)). This prohibition applies to the parties in civil cases as well. Thomas v. Diversified Contractors,Inc., 551 So.2d 343 (Ala. 1989); Edmonson v. Leesville Concrete Co.,500 U.S. 614 (1991).
 "[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race."
Powers v. Ohio, 499 U.S. 400, 409 (1991).
Under Ex parte Branch, 526 So.2d 609, the party alleging a discriminatory use of peremptory challenges has the burden of establishing a prima facie case of discrimination. Once a prima facie case has been established, it is presumed that the peremptory challenges were used to discriminate against black jurors. Id. at 623. The burden is then on the party against whom the prima facie case is established to "articulat[e] a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory." Ex parte Branch, 526 So.2d at 623, citing Batson,476 U.S. at 97 (emphasis omitted).
In Smith v. Jackson, 770 So.2d 1068, 1072-1073 (Ala. 2000), the supreme court stated:
 "Under Alabama law, the trial judge must `evaluat[e] the evidence and explanations presented' and `determine whether the explanations are sufficient to overcome the presumption of bias.' Branch, 526 So.2d at 624. `The trial judge cannot merely accept the specific reasons given . . . at face value; the judge must consider whether the facially neutral explanations are contrived to avoid admitting the acts of group discrimination.' Id."
An appellate court will not reverse the trial judge's ruling on whether the responding party presented race-neutral reasons unless it is clearly erroneous. Looney v. Davis, 721 So.2d 152, 164 (Ala. 1998). Intuition or suspicion by the responding party is insufficient to rebut the presumption of discrimination. Ex parte Branch, 526 So.2d at 623.
In Looney v. Davis, the supreme court held that the trial court abused its discretion in finding that the reason given by the plaintiff's attorney for striking a potential juror (that the potential juror "would know" the defendant's family from the country club and social activities) was legitimate and race neutral. 721 So.2d at 163. However, when the plaintiff's attorney asked the potential jurors whether any of them knew the defendant, that potential juror did not indicate that he knew the *Page 1110 
defendant or that he belonged to the country club.
In Smith v. Jackson, a husband and wife sued a building contractor and his company, alleging a breach of contract and a breach of an express warranty in building their home. The supreme court held that the explanation given by the couple's attorney for striking the potential juror (that the potential juror had sold baby items to the contractor and his family in her former occupation and that this would cause the juror to look upon the contractor more favorably) was not based on any information disclosed during voir dire. Also, nothing in the record supported this contention. No information concerning the potential juror's past employment or her having sold items to the contractor was disclosed during voir dire. Moreover, the couple's attorney asked if anyone on the venire knew the contractor and the potential juror indicated that she did not.
The court in Smith v. Jackson, 770 So.2d 1074, held that the trial court abused its discretion in finding that the reason for striking the potential juror was not pretextual. The supreme court reiterated its earlier holding that the "`removal of even one juror for a racially discriminatory reason is a violation of the equal protection rights of both the excluded juror and the party challenging the peremptory strike.'" Id. at 1074, quoting Looney, 721 So.2d at 163 (citing Ex parteJackson, 640 So.2d 1050 (Ala. 1993), and Ex parte Bird, 594 So.2d 676
(Ala. 1991)).
Juror Number 63, J.A., was struck because the paralegal for counsel for USAA recalled that the juror was coughing during voir dire. Counsel for the Oblanders did not recall that J.A. was coughing during voir dire, and, apparently, neither did counsel for USAA, because his paralegal had to call this to his attention. Counsel for USAA stated that he had some concern for the juror's health, in light of Mrs. Oblander's injuries.[3]
In Ex parte Branch, the supreme court set out the kinds of evidence that could be used to show sham or pretext when the reasons for striking a juror are not obviously contrived: (1) the reasons given are not related to the facts of the case; (2) there was a lack of questioning to the challenged juror, or a lack of meaningful questions; (3) disparate treatment in that persons with the same or similar characteristic as the challenged juror are not struck; (4) disparate examination of members of the venire when questions likely to *Page 1111 
disqualify a juror are asked to black jurors and not to white jurors; (5) the prosecutor used challenges to remove the only blacks remaining on the venire; and (6) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror. 526 So.2d at 624.
In Williams v. State, 634 So.2d 1034 (Ala.Crim.App. 1993), the prosecutor struck a black potential juror because she was elderly; she appeared to be in pain and she was stretching her leg; at the first sidebar, she left the jury box and went into the jury room; and she was the last person to come out of the jury room. The prosecutor also stated that she did not believe that this potential juror could sit through a trial.
The Court of Criminal Appeals in Williams held that a veniremember's physical disability or discomfort that might hinder the ability to serve on a jury is a sufficiently race-neutral reason. However, in the present case, counsel's reason for striking the juror was not based on a belief that a physical disability might hinder his being able to sit through the trial, but rather whether this juror would be sympathetic to Mrs. Oblander's head injuries because he was coughing. Williams is also distinguishable from the present case, because the prosecutor inWilliams provided ample testimony on the record to support her conclusion that the juror might have difficulty in performing as a juror.
We find two cases from other jurisdictions helpful in distinguishing counsel's reason for striking. In Malone v. State, 939 S.W.2d 782
(Tex.Crim.App. 1997), a black potential juror was struck because the prosecutor thought the juror might not be able to sit through the trial because, during voir dire, the juror had indicated that "he needed to take a rest to use the bathroom to take a break for some medical reason." 939 S.W.2d at 784. The State asked no questions regarding his medical condition, because by the time the juror returned to the courtroom the State had completed its voir dire. The Texas Court of Criminal Appeals held that the prosecutor's reason was legitimately race-neutral. In the present case, the potential juror's coughing did not disrupt the court proceedings, nor did the juror leave the courtroom because of any alleged medical condition. Also, counsel for USAA had ample time to ask questions of the juror if he was concerned that his coughing would cause him to be sympathetic to the plaintiff.
In People v. Buford, 235 Ill. App.3d 393, 601 N.E.2d 1099 (1992), the State struck a black juror who was coughing and who had then interrupted the judge while he was questioning the jurors and asked if she could get a cough drop from her purse. The State struck the juror, because it thought she had behaved inappropriately. The trial court stated that although he did not find the juror's behavior disrespectful, the State was acting within its prerogative. The court held that the reason was sufficiently race neutral.
Counsel for USAA did ask if any of the jurors or their family members had had a head injury or had suffered from seizures. He followed those questions by asking if that would bias them toward the plaintiff. Certainly, questioning the jurors about head injuries and seizures was specifically related to the case, because those injuries or illnesses were the subject of the lawsuit. However, there is no correlation between coughing and sympathy toward a head injury caused by a fall from a bicycle, whether the fall was caused by a seizure or otherwise. Counsel for USAA did not strike other jurors who had fallen from bicycles. Counsel asked if their injuries would make them more likely to find for the plaintiff. The proponent of the strike *Page 1112 
must give a reason for the strike "related to the particular case to be tried." Ex parte Branch, 526 So.2d at 623.
Counsel for USAA struck Juror number 64, V.D., who was not married.[4]
Counsel for USAA indicated that he had "some concern with her marital status and the marital status of Mrs. Oblander as it now existed." However, counsel for USAA did not strike Juror Sa. W. or N.E., who were white females and who, at the time of the trial, were single. Counsel for USAA also struck Juror D.R., because she was not married, had a low-income job, and did not make any comments. However, counsel for USAA did not strike Juror Sa. W., a white juror, who was single and had no income at all. An inference of discrimination can be found when there is disparate treatment, i.e., when persons with the same or similar characteristics as the challenged juror are not struck. Branch, 526 So.2d 624. Marital status may be a sufficient race-neutral reason, if there is no evidence of disparate treatment. Woods v. State,675 So.2d 50 (Ala.Crim.App. 1995). In the present case, there was evidence of disparate treatment.
It is troubling that the trial court was apparently unfamiliar with the procedure to be followed when a Batson motion is made. Although counsel informed the court of the procedure, it is disconcerting that the court ruled before hearing rebuttal evidence from counsel for the Oblanders. Although the trial court is not required to explain its ruling on aBatson motion, it does have to adequately consider whether the facially neutral reasons are contrived to avoid admitting acts of group discrimination.
 "[T]he trial judge must make a sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he knows them, his knowledge of trial techniques, and his observation of the manner in which the prosecutor examined the venire and the challenged jurors
". . . .
 ". . . [T]he trial judge cannot merely accept the specific reasons given by the prosecutor at face value."
Ex parte Branch, 526 So.2d at 624.
Based on the foregoing, we hold that the Oblanders are entitled to a new trial, based on Batson.
The Oblanders make two additional arguments. They argue that the trial court erred in entering a summary judgment in favor of USAA on their bad-faith claim regarding USAA's failure to investigate their claim. We disagree, concluding that Weaver v. Allstate Insurance Co., 574 So.2d 771
(Ala. 1990), is dispositive of that issue. In Weaver, the plaintiff argued that Allstate had failed to adequately investigate the accident. The supreme court held that there was no triable issue on failure to investigate, because Allstate's investigation had established a legitimate or arguable reason for refusing to pay.
The Oblanders argue that the trial court abused its discretion in admitting evidence of Mrs. Oblander's seizures. We disagree. Mrs. Oblander was on seizure medication, she had had a seizure two weeks before the accident, and deposition testimony from one of her doctors indicated that Mrs. Oblander had told him "she believed she may have had one that precipitated *Page 1113 
her bike accident." A trial court has great discretion in determining the admissibility of evidence, and its rulings on admissibility will not be reversed on appeal absent an abuse of discretion. State Farm Mut. Auto.Ins. Co. v. Scott, 707 So.2d 238 (Ala.Civ.App. 1997).
The judgment is affirmed as to the bad-faith claim. It is otherwise reversed.
OPINION OF AUGUST 4, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
Robertson, P.J., and Monroe, J., concur.
Crawley and Thompson, JJ., concur in the result.
[1] There were two jurors with the same last name. S.W. was married and stated that she was a homemaker. P.W. was single and was a bookkeeper. A list of the jurors and their numbers was not included in the record, but we believe counsel was referring to S.W. and was mistaken about her marital status.
[2] In Branch, the supreme court held that Art. I, §§ 1, 6, and 22
of the Alabama Constitution 1901, guaranteed a criminal defendant the equal protection of the laws. In Ex parte Melof, 735 So.2d 1172 (Ala. 1999), a plurality of the supreme court disputed whether §§ 1, 6, and 22 combined to guarantee equal protection under Alabama law. See also,Hutchins v. DCH Reg'l Med. Ctr., 770 So.2d 49 (Ala. 2000) (noting that it is disputed as to whether §§ 1, 6, and 22 combine to guarantee equal protection). In Smith v. Jackson, 770 So.2d 1068 (Ala. 2000), the supreme court applied the procedure set out in Branch challenging the use of peremptory strikes.
[3] On rehearing, USAA contends that J.A.'s "physical appearance and vocal expression of physical impairment through coughing" might incline J.A. to be sympathetic toward Mrs. Oblander. However, counsel for USAA did not state on the record at trial that J.A. appeared ill, nor did he make that contention in his original brief. Therefore, nothing in the record supports USAA's new contention that J.A.'s appearance was an additional reason to strike him from the jury. USAA also appears to argue that in addition to seizures and head injuries, Mrs. Oblander had respiratory problems and that J.A.'s coughing would have made him sympathetic to her fall from the bike. First, USAA does not cite to the record with regard to its contention that Mrs. Oblander had respiratory problems, nor did it make this contention in its original briefs. Appellate courts are "`not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal.'" Quality Truck Auto Sales, Inc. v.Yassine, 730 So.2d 1164, 1168 n. 5 (Ala. 1999), quoting Totten v.Lighting Supply, Inc., 507 So.2d 502, 503 (Ala. 1987). Second, USAA made no argument at trial that some sort of respiratory problem had caused Mrs. Oblander to fall from her bike. Rather, it was USAA's contention that she had fallen from the bike because of a seizure. Therefore, we will not address any alleged respiratory problems that USAA raises for the first time on its application for rehearing.
[4] V.D. answered that she was separated. The trial court stated that "Not married is adequate for us." Juror Sa. W. answered that she was single. Juror N.E. answered that she was not married. Therefore, we cannot tell from the record whether Sa.W. or N.E. was divorced, separated, or had never been married. No further questions were asked of the jurors regarding their marital status.