PER CURIAM.
Willie Shade Williams, Jr., and Betty G. Williams, on April 11, 1997, sued Gene Waters; Brandy Rae Waters, the minor daughter of Gene Waters; and State Farm Mutual Automobile Insurance Company, seeking damages based on allegations of negligence and wantonness, negligent en-trustment, and loss of consortium. All claims arose out of an automobile accident. The complaint also sought uninsured-motorist benefits.
Gene Waters moved for a summary judgment on June 18, 1999; the trial court granted the summary judgment on August 4, 1999. On September 29, 1999, State Farm moved the court to permit it to opt out of the trial proceedings, pursuant to Lowe v. Nationwide Insurance Co., 521 So.2d 1309 (Ala.1988). The court granted the motion on October 4, 1999.
The case proceeded to trial, and on April 5, 2000, the jury returned a verdict in *1002 favor of the Williamses. The jury awarded Willie $250,000 on his claims and awarded Betty $50,000 on her loss-of-consortium claim. On April 12, 2000, the trial court entered a judgment in favor of the Williamses on the jury verdict.
On April 19, 2000, Brandy Waters moved for a new trial, or, in the alternative, a postverdict judgment as a matter of law (“JML”), arguing (1) that the Williamses had exercised their peremptory jury strikes in a manner that violated her federal and state constitutional rights, by violating the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987), and (2) that the court had erred in failing to charge the jury on the sudden-emergency doctrine. Following a hearing on Brandy’s post-judgment motion, the court, on July 3, 2000, entered an order denying it. Brandy appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7, Ala.Code 1975.
On July 5, 1995, Willie was driving his automobile on Forest Avenue in Jackson. Brandy was also driving an automobile on Forest Avenue and was following Willie. When Willie brought his car to a stop on Forest Avenue, in order to turn onto Walnut Street and go home, he was struck in the rear by the automobile being driven by Brandy.
Brandy argues on appeal that the trial court erred in denying her Batson challenge to the Williamses’ peremptory strikes. She specifically argues that the Williamses’ counsel failed to engage the potential jurors in a meaningful voir dire and that that failure is evidence that the race-neutral reasons offered by the Williamses to explain the exercise of their peremptory strikes were a sham or a mere pretext for purposeful discrimination.
In Oblander v. USAA Casualty Insurance Co., 792 So.2d 1103 (Ala.Civ.App.2000), this court enunciated the procedure and law applicable to a Batson challenge:
“The United States Constitution prohibits a prosecutor from exercising his peremptory challenges in a racially discriminatory manner. Ex parte Branch, 526 So.2d 609, 621 (Ala.1987) (interpreting Batson and Ex parte Jackson, 516 So.2d 768 (Ala.1986)). This prohibition applies to the parties in civil cases as well. Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala.1989); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
“ ‘[T]he Equal Protection Clause prohibits a prosecutor from using the State’s peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race.’
“Powers v. Ohio, 499 U.S. 400, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
“Under Ex parte Branch, 526 So.2d 609, the party alleging a discriminatory use of peremptory challenges has the burden of establishing a prima facie case of discrimination. Once a prima facie case has been established, it is presumed that the peremptory challenges were used to discriminate against black jurors. Id. at 623. The burden is then on the party against whom the prima facie case is established to ‘articulat[e] a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory.’ Ex parte Branch, 526 *1003 So.2d at 623, citing Batson, 476 U.S. at 97, 106 S.Ct. 1712 (emphasis omitted).
“In Smith v. Jackson, 770 So.2d 1068, 1072 (Ala.2000), the supreme court stated:
“ ‘Under Alabama law, the trial judge must “evaluat[e] the evidence and explanations presented” and “determine whether the explanations are sufficient to overcome the presumption of bias.” Branch, 526 So.2d at 624. “The trial judge cannot merely accept the specific reasons given ... at face value; the judge must consider whether the facially neutral explanations are contrived to avoid admitting the acts of group discrimination.” Id.’
“An appellate court will not reverse the trial judge’s ruling on whether the responding party presented race-neutral reasons unless it is clearly erroneous. Looney v. Davis, 721 So.2d 152, 164 (Ala.1998). Intuition or suspicion by the responding party is insufficient to rebut the presumption of discrimination. Ex parte Branch, 526 So.2d at 623.
[[Image here]]
“... [T]he ‘ “removal of even one juror for a racially discriminatory reason is a violation of the equal protection rights of both the excluded juror and the party challenging the peremptory strike.” ’ [Smith, 770 So.2d at 1074], quoting Looney, 721 So.2d at 163 (citing Ex parte Jackson, 640 So.2d 1050 (Ala.1993), and Ex parte Bird, 594 So.2d 676 (Ala.1991)).
[[Image here]]
“... Although the trial court is not required to explain its ruling on a Bat-son motion, it does have to adequately consider whether the facially neutral reasons are contrived to avoid admitting acts of group discrimination.
“ ‘[T]he trial judge must make a sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he knows them, his knowledge of trial techniques, and his observation of the manner in which the prosecutor examined the venire and the challenged jurors.’
[[Image here]]
“ ‘[T]he trial judge cannot merely accept the specific reasons given by the prosecutor at face value.’
“Ex parte Branch, 526 So.2d at 624.”
Oblander, 792 So.2d at 1108-12.
In this ease, the jury venire consisted of 30 members — 16 African-Americans and 14 Caucasians. Counsel for the Williamses used his peremptory strikes to strike one African-American female, three Caucasian females, and five Caucasian males. Counsel for Brandy used his peremptory strikes to strike three African-American females, three African-American males, one Caucasian female, and two Caucasian males. Counsel for Brandy made a “reverse” Batson motion,[1] alleging that the Williamses’ peremptory strikes were exercised in a racially discriminatory manner, because eight of their nine strikes were exercised against Caucasians. The trial court determined that Brandy had established a prima facie case of discrimination and required the Williamses to present race-neutral reasons to justify the exercise of their strikes.
*1004 Veniremember J.O. testified during the voir dire examination that his wife is employed as a real-estate agent at Pope Real Estate. After exercising a peremptory strike against J.O., counsel for the Williamses explained that he has sued Pope Real Estate three times, including one action that was pending at the time of trial, and that the Pope Real Estate firm does not “have good feelings toward [him.]” The record contains three complaints in which counsel for the Williamses had sued Pope Real Estate on behalf of other clients.
During the voir dire, the venire was asked by counsel for the Williamses whether they themselves or any member of their family had ever been sued or had ever been a defendant in a lawsuit. Veniremember J.H. stated that in her capacity as an employer she had been sued. She also stated that her husband had previously owned an automobile dealership and had been sued but that the lawsuit had been settled. Counsel for the Williamses used a peremptory strike against J.H. and counsel explained that he had previously represented a client that had sued J.H. The record contains a copy of the complaint in that case.
During the voir dire, counsel for the Williamses asked the veniremembers if anyone knew Gary Perkins, a local State Farm agent; veniremember J.J. responded by stating that they were friends. When the Williamses’ counsel further questioned J.J. about his association with Perkins, J.J. said that their friendship had resulted from the fact that Perkins’s wife was employed by the credit union of which J.J. was a member. Counsel for the Williamses used a peremptory strike to strike J.J. The Williamses’ counsel stated that he struck J.J. because of his friendship with Perkins’s wife, and he also explained that Perkins often assists State Farm’s trial counsel with jury selection.
Veniremember C.P. informed the court during voir dire that she was a nurse. The Williamses’ counsel used a peremptory strike to strike her and explained that he struck her because, after another nurse had been struck by opposing counsel, she was the only person left on the venire who had any medical knowledge.
Veniremember J.P. informed the court during voir dire that she knew Brandy’s mother because their sons had played baseball together for three or four years. J.P. also stated that she had spoken to Brandy’s mother in court that day. The Williamses’ counsel used a peremptory strike to strike her and explained that he struck her because of her relationship with Brandy’s mother.
Veniremember J.W. informed the trial court during voir dire that her husband’s name was L.J.W. Counsel for the Williamses struck J.W. and explained that he had previously represented a client that had sued her husband. The record contains a copy of the complaint in that case.
Veniremember C.L.G. informed the trial court during voir dire that he is employed by Scotch Lumber Company as a supervisor and that he had been represented in his divorce case by a partner of the Williamses’ counsel. The Williamses’ counsel used a peremptory strike to strike C.L.G. and explained that among the several reasons for exercising this particular strike was that C.L.G. was a supervisor at Scotch Lumber Company and that he had represented parties who had previously sued Scotch Lumber and that one such lawsuit was currently pending. The record contains a copy of the complaints in those cases. The counsel for the Williamses also explained that another reason for striking C.L.G. was that he had suffered medical problems like those that *1005 would be discussed during the course of the trial. The Williamses’ counsel further stated that one of his law partners had represented C.L.G. in a divorce, “[a]nd based upon things I’d rather not go into, there were some things there that caused me to strike him.” The record contains a copy of the complaint in that case.
Veniremember S.H. informed the court during voir dire that he is employed as a sales associate at the Wal-Mart store in Jackson. The Williamses’ counsel used a peremptory strike to strike S.H. and explained that he had previously represented clients that had sued Wal-Mart and that he had one such suit currently pending. The record contains copies of the complaints in those cases. The Williamses’ counsel further explained that he struck S.H. because Wal-Mart had “been sued a number of times in this county” and that “[Wal-Mart] talks to their employees about lawsuits,” implying that S.H. might be biased.
Veniremember J.P. informed the court during voir dire that he was employed at Gulf States Paper Company. Counsel for the Williamses used a peremptory strike to strike J.P. and explained that he was currently representing a burn victim in a widely publicized case against Gulf States in Marengo County. Counsel for the Williamses stated that he had visited the plant on several occasions and that 10 to 12 Gulf States’ employees were witnesses in that case. The record contains a copy of the complaint filed in that case. The trial court questioned the Williamses’ counsel as to the circumstances of that case. The Williamses’ counsel responded by stating that his client was employed by a separate company that had contracted with Gulf States to repair a leak and had been severely burned by steam while doing so. Counsel for the Williamses stated:
“And so we have sued Gulf States, and my man is not a co-employee of — of [J.P.]. And I’m — I’m concerned because of the furor that’s been created up at Gulf States about this case. It could definitely affect — And if they knew he was on one of my juries, I could assure you it would affect it. So that was why I struck him.”
Counsel for the Williamses also stated that J.P. had informed the court during voir dire that he had previously been employed as a truck driver and that “that bothers me in a wreck case ... because [truck drivers are] generally more defense oriented.”
The court found that the Williamses’ counsel had given sufficient race-neutral reasons for exercising his peremptory strikes. Brandy’s counsel objected, stating, “I would just state for the record, I think as far as stating race-neutral reasons, I think there has to be something in the record during the voir dire examination that would give the race-neutral basis.” Specifically, he argued that venire-members J.O., C.L.G., S.H., and J.P. were not sufficiently questioned regarding their knowledge, if any, of any lawsuits against their employers or their spouse’s employer that would affect their ability to act as a fair and impartial juror. The trial court stated: “Based on my knowledge of the lawsuits that [the Williamses’ counsel had] filed, for example, against Pope Realty and ... against Scotch Lumber Company and against Wal-Mart, I do think that the plaintiff has given sufficient race-neutral reasons, and I will allow them to stand.”
When a lawyer offers, in opposition to a Batson objection, the reasons for his peremptory challenges, the trial judge necessarily assumes the role of deciding the lawyer’s credibility. Ex parte Branch, 526 So.2d 609, 624 (Ala.1987). The court must “evaluate ... the [lawyer’s] explanations” *1006 and determine whether those explanations are “contrived to avoid admitting acts of group discrimination.” Id.
The United States Supreme Court has stated:
“In the typical peremptory challenge inquiry, the decisive question will be whether counsel’s race/gender neutral explanation will be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. Thus, evaluation of the attorney’s state of mind based on demeanor and credibility lies peculiarly within a trial judge’s province.”
Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). As with any credibility determination by the trial court, the decision whether a lawyer has offered legitimate race-neutral reasons for his peremptory challenges is entitled to great deference and will not be overturned unless it is clearly erroneous. Looney v. Davis, 721 So.2d 152, 164 (Ala.1998); Ex parte Branch, 526 So.2d at 625.
In Ex parte Brown, 686 So.2d 409, 420 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), our supreme court upheld as race-neutral the strike of a potential juror who worked for a company at which the district attorney’s office had conducted an embezzlement investigation, without voir dire testimony aimed at discovering whether the potential juror actually knew of the investigation. As to veniremembers J.O. (whose spouse was a real-estate agent at Pope Real Estate Company,), C.L.G. (who was a supervisor at Scotch Lumber Company), S.H. (who was a sales associate at Wal-Mart), and J.P. (who worked at Gulf States Paper Company), counsel for the Williamses gave the same reason for his peremptory challenges: he represented a party or parties who had sued or were suing the employers of the potential jurors or the employers of the potential jurors’ spouses. With the exception of the lawsuit against Gulf States, all of the lawsuits were filed in Clarke County. The trial judge indicated that he had actual knowledge of the other lawsuits the Williamses’ counsel had filed, and he questioned the Williamses’ counsel about the litigation against Gulf States, with which he was not familiar. It is the trial court’s duty to “evaluate the evidence and explanations presented” in order to determine whether such explanations are legitimate race-neutral reasons and, we conclude, that the court, as the finder of fact, is not simply limited to what is elicited on voir dire, but may rely on his own personal knowledge in making that determination. Clarke County is not a major metropolitan area with a large population base. It is reasonable to assume that the trial judge would be familiar with local employers such as Pope Real Estate, Scotch Lumber Company, and Wal-Mart, that he would have a general idea of how many employees those businesses have, and that he would be able to assess the likelihood of a particular employee’s knowing about a prior lawsuit filed against the employer by the Williamses’ counsel. The trial judge, as with any fact-finder, is not required to check his common sense at the courtroom door. Accordingly, we conclude that the trial court did not abuse its discretion in denying Brandy’s Batson challenge alleging an insufficient voir dire examination.
Brandy also argues that counsel for the Williamses’ gave disparate treatment of veniremember J.P. and that that disparate treatment is evidence that he exercised his peremptory strikes in a discriminatory manner. Evidence showing that race-neutral reasons for using per *1007 emptory challenges are a sham or a pretext for discrimination include the existence of disparate treatment — that persons with the same or similar characteristics as the challenged juror were not struck. Oblander, supra. The reasons given by the Williamses’ counsel for striking J.P. include that he had previously sued J.P.’s employer and that J.P. had been a truck driver and that truck drivers are generally defense oriented. Brandy contends that J.P. was discriminated against because the Williamses’ counsel did not exercise a peremptory strike to strike M.J., an African-American, who was self-employed as a truck driver and who had also been a defendant in a lawsuit. We disagree, because of one very important distinction; there was no evidence that M.J., or an employer of M.J., had ever been sued by the counsel for the Williamses, as was the case with J.P. Accordingly, we find no error here.
Brandy next argues that the court erred in failing to instruct the jury on the sudden-emergency doctrine. “In order for the sudden emergency doctrine to be applicable, there must be 1) a sudden emergency; and 2) the sudden emergency must not be the fault of the one seeking to invoke the rule.” Friedlander v. Hall, 514 So.2d 914, 915 (Ala.1987). “ ‘[W]hen the evidence presents a question of fact as to whether the defendant contributed to the emergency, the giving of the charge is proper and the jury must determine whether the defendant was faced with a “sudden emergency.” ’ ” Nichols v. Elixer Indus., 613 So.2d 1259, 1260 (Ala.1993), quoting Williams v. Worthington, 386 So.2d 408, 409 (Ala.1980).
The evidence indicates that the automobile accident that is the subject of this lawsuit occurred during the daylight hours and on a clear day. Willie testified that he was headed home on Forest Avenue after attending a retirement luncheon. He stated that approximately a block before reaching Walnut Street, where he was to turn, he slowed, checked his rear-view mirror, and turned on his turn signal. Willie stated that he did not see an automobile in his rear-view mirror. He testified that as he was about to turn onto Walnut Street he felt a tremendous impact from the rear.
Brandy testified that she first noticed Willie’s automobile when she saw his brake lights and that she was behind him about three car lengths. Brandy stated that Willie stopped his automobile abruptly and that he did not have a turn signal on. She testified that she hit her brakes “as fast and as hard as [I] could.”
The police officer who investigated the accident testified that at no time did Brandy inform him that Willie did not have his turn signal on; that he had stopped abruptly; or that he had done anything wrong. The police officer further testified that there were no skid marks present at the scene; such marks, the officer said, would indicate that someone had braked suddenly.
After carefully reviewing the record, we cannot say that the trial court erred in failing to charge the jury on the sudden-emergency doctrine.
AFFIRMED.
YATES, P.J., and CRAWLEY, J., concur.
THOMPSON and MURDOCK, JJ., concur in the result.
PITTMAN, J., concurs in part and dissents in part.

. Both the Williamses and Brandy are white. Batson objections apply to challenge the exercise of peremptory strikes against Caucasian veniremembers solely on account of their race, just as they do to challenge the exercise of peremptory strikes against African-American veniremembers solely on account of their race. See Williams v. State, 634 So.2d 1034 (Ala.Crim.App.1993).